**DRAY, DYEKMAN, REED & HEALEY, P.C.**
Gregory C. Dyekman
Timothy L. Woznick
204 East 22nd Street
Cheyenne, Wyoming 82001
(307) 634-8891

-and-

**DENTONS US LLP**
D. Farrington Yates
Oscar N. Pinkas (pro hac pending)
James A. Copeland
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

*Counsel for the Petitioner*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re<br><br>STRATA ENERGY SERVICES INC.,<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 15-_____ |
| In re<br><br>STRATA SERVICES INTERNATIONAL INC.,<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 15-_____<br><br>Recognition and Joint<br>Administration Requests Pending |

### VERIFIED PETITIONS FOR RECOGNITION OF CANADIAN
### PROCEEDING UNDER CHAPTER 15 AND MOTION
### FOR ORDER GRANTING RELATED RELIEF

The Fuller Landau Group Inc., in its capacity as the appointed receiver and duly

authorized foreign representative (in such capacity, the "Petitioner") for Strata Energy

Services Inc. ("Strata Energy") and Strata Services International Inc. ("Strata

-1-

International" together with Strata Energy, "Strata" or the "Debtors") in respect of that certain receivership proceeding commenced pursuant to section 243 of Canada's *Bankruptcy and Insolvency Act* (R.S.C. 1985, c. B-3) (the "BIA"), pending before the Court of Queen's Bench of Alberta, Judicial Centre of Calgary (the "Canadian Court"), File No. 1501-12233 (the "Canadian Proceeding"), by and through its United States counsel, Dentons US LLP and Dray, Dyekman, Reed & Healey, P.C., respectfully submits these verified petitions and a related motion (collectively, the "Verified Petition") seeking, among other things, the entry of the proposed order attached hereto as Exhibit A (the "Proposed Order") (i) recognizing the Canadian Proceeding as (a) a "foreign main proceeding" or, in the alternative, (b) a "foreign non-main proceeding" under sections 1502(4), 1502(5), 1515, and 1517 of title 11 of the United States Code (the "Bankruptcy Code"); (ii) recognizing the Petitioner as the "foreign representative" of the Debtors as defined in section 101(24) of the Bankruptcy Code; and (iii) granting such other and further relief as the Court deems just and proper.

In support of this Verified Petition, the Petitioner relies on (i) the *Declaration of Ken Pearl in Support of Verified Petitions for Recognition of Canadian Proceeding Under Chapter 15 and Motion for Order Granting Related Relief* (the "Petitioner Declaration") and (ii) the *Declaration of David W. Mann in Support of Verified Petitions for Recognition of Canadian Proceeding Under Chapter 15 and Motion for Order Granting Related Relief* (the "Mann Declaration" together with the Petitioner Declaration, the "Declarations") filed concurrently herewith and incorporated as if fully set forth herein.  In addition to the Petitioner Declaration and in further support of the

Verified Petition, the Petitioner respectfully represents as follows.[1]

## PRELIMINARY STATEMENT

The Debtors' center of main interests ("COMI") and nerve center are in Canada. Moreover, the Canadian Proceeding constitutes a collective foreign proceeding for purposes of chapter 15.   Under these circumstances, recognition of the Canadian Proceeding as a foreign main proceeding is proper, which Courts around the country have done regularly under similar circumstances (discussed further below).   Like the request for recognition of the Canadian Proceeding as a foreign main proceeding, the remaining relief sought in this Verified Petition is straightforward, unremarkable and expressly provided for by statute.[2]

## JURISDICTION, VENUE, AND ELIGIBILITY

1.     This Court has jurisdiction to consider this Petition pursuant to sections 157 and 1334 of title 28 of the United States Code.   This is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code.   *See* 28 U.S.C. § 157(b)(2)(P) ("Core proceedings include, but are not limited to . . . recognition of foreign proceedings and other matters under chapter 15 of title 11").

2.     Venue is proper in this Court pursuant to section 1410(1) of title 28 of the

---

[1]   The Petitioner respectfully submits that this Verified Petition satisfies Rule 9013-1 of the Local Rules for the United States Bankruptcy Court for the District of Wyoming (the "Local Rules"); alternatively, the Petitioner respectfully requests that compliance with Rule 9013-1 be waived.   However, the Petitioner reserves the right to file a further memorandum of law to the extent the circumstances so require.

[2]   While the Petitioner has not sought interim relief, the Petitioner reserves the right to do so as needed.

United States Code, which provides that "[a] case under chapter 15 of title 11 may be commenced in the district court of the United States for the district[] in which the debtor has its principal place of business or principal assets in the United States." The Debtors own and maintain approximately $6 million in equipment, vehicles, and other assets within the United States, the majority of which are located within this District. (*See* Petitioner Decl. ¶¶44-46.) In addition, the Debtors operate a small administrative office and repair facility in Cheyenne, Wyoming, which constitutes their principal place of business within the United States. (*See id*. at ¶45.)

3.    Moreover, the presence of the above assets within the United States makes the Debtors eligible for relief under chapter 15 pursuant to section 109(a) of the Bankruptcy Code. *See* 11 U.S.C. § 109(a) ("only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title").

## **BACKGROUND**

4.    The Debtors—comprising Strata Energy, the Canadian parent, and Strata International, the US subsidiary—constitute a fully integrated provider of oilfield services with a special focus on managed pressure and underbalanced drilling, and provides an array of oil-and-gas products and services to their clients. (*See* Petitioner Decl. ¶6.) The Debtors operate as a global enterprise, assisting their oil-and-gas clients in their extraction operations in multiple countries and geographies. (*Id*. at ¶7.) The Debtors' primary management team and headquarters are located at Strata Energy's

registered place of business in Alberta, Canada (the "Head Office"). (*Id.* at ¶9.) The Debtors also have regional and/or auxiliary offices in the United States, United Arab Emirates, Kurdistan, and Indonesia. (*Id.* at ¶7.)

5.     The Debtors funded operations through secured debt obtained from PNC Bank Canada Branch ("PNC Bank") and BDC Capital Inc. ("BDC Capital"). (*See id.* at ¶¶12, 15.)  Pursuant to that certain PNC Credit Agreement between Strata Energy and PNC Bank, PNC Bank made certain Advances to the Debtors in the approximate amount of CAD $22.5 million.  (*See id.* at ¶25.)  Strata International guaranteed (the "Guarantee") all obligations owing by Strata Energy to PNC Bank under the PNC Credit Agreement.  (*Id.* at ¶14.)  The Advances and all other amounts advanced under the PNC Credit Agreement and the Guarantee were secured by a security interest in substantially all of the Debtors' assets.  (*See id.*)  In addition to the PNC Credit Agreement, it appears that the Debtors obtained approximately CAD $5 million in additional secured debt from BDC Capital.  (*See id.* at ¶16.)  Further, on March 30, 2012, PNC Bank, BDC Capital, and the Debtors entered into that certain Inter-creditor Agreement (the "Intercreditor Agreement"), pursuant to which PNC Bank agreed to partially subordinate its Security with respect to certain collateral to the BDC Capital's security interest with respect to certain of Strata Energy's intellectual property and life-insurance proceeds. (*See id.* at ¶17.)

6.     Between 2013 and 2014, the Debtors' financial condition began to rapidly deteriorate due, in large part, to macroeconomic conditions.  Declining oil prices and reduced demand for oil have taken a toll on the global oil-and-gas industry, and forced a

number of the Debtors' clients to scale back—and in some cases, cease—operations, and as a result, the Debtors soon encountered significant cash-flow problems, and struggled to generate enough cash to both maintain their operations and service their debt.  (*See id.* at ¶19.)   Consequently, in December 2014, Strata Energy breached certain financial covenants under the PNC Credit Agreement and defaulted thereunder.[3]  (*Id*. at ¶20.)  And on May 29, 2015, PNC Bank issued demands and notices of its intention, in accordance with section 244 of the BIA, to (i) enforce its Security and (ii) accelerate the indebtedness under the PNC Credit Agreement.  (*Id*. at ¶21.)

7. Shortly thereafter, PNC Bank and the Debtors executed that certain forbearance agreement effective June 1, 2015 (the "<u>Forbearance Agreement</u>") for the purpose of allowing the Debtors time to complete a sale of some or all of their assets, specifically, certain of Strata Energy's assets located in Iraq (the "<u>Iraq Assets</u>").  Under the Forbearance Agreement, Strata Energy was required to obtain a commitment for the sale of the Iraq Assets on or before June 30, 2015.  (*Id*. at ¶22.)  The proceeds of any such sale were to be used to reduce the PNC Indebtedness under the PNC Credit Agreement. (*Id*.)  Under the terms of the Forbearance Agreement, PNC Bank also released to Strata Energy $400,000 from a reserve in order to fund the sale of the Iraq Assets.  (*Id*. at ¶23.)

8. However, the Debtors failed to obtain a commitment with respect to the sale of the Iraq Assets by the applicable deadline, and PNC Bank did not agree to extend

---

[3]   In addition, as of June 2015, Strata Energy breached certain financial covenants in connection with its obligations to BDC, which constituted an additional event of default under the PNC Credit Agreement.

the terms of the Forbearance Agreement or otherwise advance additional funds. (*Id.* at ¶24.) Accordingly, PNC Bank determined that the Debtors could not continue to manage their business or complete a formal sale process and thus, a receiver should be immediately appointed to oversee the Debtors' cash flow and commence a sales process. (*Id.* at 28.)

9. On November 6, 2015, PNC Bank filed and served notice of its originating application for the appointment of a receiver with respect to both Strata Energy and Strata International in the Canadian Proceeding. (*Id.* at ¶29.) On November 10, 2015, the Canadian Court conducted a hearing in connection with PNC Bank's receivership application and entered the consent receivership order (the "Receivership Order") in the Canadian Proceeding appointing the Petitioner as receiver over all of the Debtors' "current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate, including all proceeds thereof" and further authorized the Petitioner to act as the Debtors' foreign representative with respect to these chapter 15 cases. (*Id.* at ¶29-33.) The Petitioner, having recently been appointed receiver in the Canadian Proceeding, is in the process of investigating the Debtors' assets and affairs. (*Id.* at ¶42.) However, in the short term, the Petitioner has hired an investment bank to run a new sale process and hopes to identify a potential purchaser willing to serve as a stalking-horse bid. (*Id.*)

10. The Petitioner respectfully refers the Court to the Petitioner Declaration filed concurrently herewith for additional information regarding the Debtors' business

operations, assets and liabilities, and the circumstances leading to the commencement of

the Canadian Proceeding and these chapter 15 cases.

## **RELIEF REQUESTED**

11.   The Petitioner respectfully requests that this Court enter an order,

substantially in the form of the attached Proposed Order,

(i)    recognizing the Canadian Proceeding as (a) a "foreign main proceeding" or, in the alternative, (b) a "foreign non-main proceeding" under sections 1502(4), 1502(5), 1515, and 1517 of the Bankruptcy Code;

(ii)   recognizing the Petitioner as the "foreign representative" of the Debtors as defined in section 101(24) of the Bankruptcy Code;

(iii)  granting the Petitioner authority—pursuant to section 1521(a) of the Bankruptcy Code—to (a) examine witnesses, take evidence, and deliver information concerning the Debtors' assets, affairs, rights, obligations, and liabilities and (b) administer, realize, and distribute any and all of the Debtors' assets within the territorial jurisdiction of the United States;

(iv)  staying—pursuant to section 1521(a) of the Bankruptcy Code—the execution, commencement, or continuation of any action or proceeding concerning the Debtors' assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520;

(v)   suspending—pursuant to section 1521(a) of the Bankruptcy Code—the right to transfer, encumber or otherwise dispose of any of the Debtors' assets to the extent any such right has not been suspended under sections 362 and 1520(a) of the Bankruptcy Code; and

(vi)  granting such other and further relief as the Court deems just and proper.

In addition, the Petitioner may—to the extent it deems necessary—return to this Court to

seek recognition or enforcement of any orders entered by the Canadian Court in

connection with the Canadian Proceeding or any other relief available to the Petitioner

under chapter 15 of the Bankruptcy Code, which may include the recognition of an order

by the Canadian Court approving a Sale (defined herein) of some or all of the Debtors'

assets.

## BASES FOR RELIEF

12.      Chapter 15 of the Bankruptcy Code applies where assistance is sought in a

United States court by a foreign representative.   11 U.S.C. § 1501(b)(1).   The stated

objectives of chapter 15 include: (i) cooperation between United States courts and foreign

courts in cross-border insolvency cases, (ii) "legal certainty for trade and investment,"

(iii) protection of all interested parties in a cross-border insolvency, and (iv)

"maximization of the value of the debtor's assets."   11 U.S.C. § 1501(a); *see In re

Oversight & Control Comm'n. of Avánzit, S.A.*, 385 B.R. 525, 534 (Bankr. S.D.N.Y.

2008).   The Petitioner respectfully submits that each of these goals can best be achieved

by recognizing that Canada is the Debtors' center of main interests (COMI) and thus, that

the Canadian Proceeding is a foreign main proceeding.

### A.      The Canadian Proceeding is a "Foreign Main Proceeding"

13.      Section 1517(a) of the Bankruptcy Code provides that, after a notice and

hearing, a court will enter an order recognizing a "foreign proceeding" as a "foreign main

proceeding" if (i) such proceeding falls within the definition of a "foreign main

proceeding" pursuant to section 1502(4) of the Bankruptcy Code; (ii) "the foreign

representative applying for recognition is a person or body;" and (iii) the chapter 15

petition satisfies the requirements set forth in section 1515 of the Bankruptcy Code. *See

Oversight*, 385 B.R. at 532.

-9-

14.     Under section 1502(4) of the Bankruptcy Code, a "foreign main proceeding" is (i) a foreign proceeding (ii) "pending in the country where the debtor has the center of its main interests."  Under section 1517(b)(1) of the Bankruptcy Code, if the foreign proceeding is pending in a country where the debtor has its COMI, recognition as a "foreign main proceeding" is mandatory.  As discussed in greater detail below, the Canadian Proceeding is a "foreign proceeding" pending in the Debtors' COMI—Alberta, Canada.  Thus, pursuant to section 1517(b)(1) of the Bankruptcy Code, the Canadian Proceeding should be recognized as a "foreign main proceeding."

### 1.     The Canadian Proceeding is a "Foreign Proceeding"

15.     Under the Bankruptcy Code, a "foreign proceeding" means

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).   Thus, pursuant to section 101(23) of the Bankruptcy Code, a foreign proceeding must meet four requirements: (i) a collective judicial or administrative proceeding relating to insolvency or the adjustment of debts, (ii) pending in a foreign country, (iii) under the supervision of a foreign court, and (iv) for the purpose of reorganizing or liquidating a debtor's assets or affairs.  *See id*.  Further, the Bankruptcy Code defines a "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding."  11 U.S.C. § 1502(3).

16.     Here, the Canadian Proceeding plainly qualifies as a "foreign proceeding"

under the Bankruptcy Code.  First, the BIA's receivership process constitutes a collective judicial proceeding as a result of the Debtors' insolvency and inability to meet their debt obligations in the ordinary course.  (*See* Mann Decl. ¶5.)  In fact, a BIA receivership functions much the same way a liquidation does under chapter 7 of the Bankruptcy Code. (*Id.*)  As a result of certain amendments to the BIA, BIA receivers—like the Petitioner— are "officers of the court" with duties to all creditors, and act under the direction and instruction of the Canadian Court, not the creditor who commenced the receivership. (*See id.* at ¶¶5-9, 22, 28-29.)   Accordingly, the Canadian Court must approve any proposed Sale of the Debtors' assets; and to the extent any such Sale occurs, the Petitioner will distribute the proceeds to creditors in accordance with their statutory entitlements and priorities—much like a liquidation under chapter 7 of the Bankruptcy Code.  (*See id.* at ¶21.)  Further—like the Bankruptcy Code—the BIA imposes a broad stay in order to facilitate an orderly wind down and protect the Debtors, their assets, their creditors, and certain of their directors and officers, which preserves the Debtors' estates and creates a centralized forum within which the Petitioner can address the Debtors' liabilities.  (*See id.* ¶14.)  Moreover, in a BIA receivership proceeding, creditors typically have standing to object to any relief requested by the Petitioner or otherwise seek relief from the Canadian Court.  (*See id.* at ¶24.)

17.     Second, the Canadian Proceeding was commenced in a foreign country— Canada.  (Petitioner Decl. ¶¶2, 29.)  Third, the Petitioner's management of the Debtors' assets and affairs is supervised by the Canadian Court.  (Mann Decl. ¶¶22, 28-29.)  And fourth, as the appointed BIA receiver, the Petitioner is mandated—much like a chapter 7

trustee under the Bankruptcy Code—to take possession and control of the Debtors' property and assets, wherever situated, in order to maximize the value thereof, and distribute the proceeds to stakeholders commensurate with their legal priorities. (*See* Petitioner Decl. ¶¶32-36; Mann Decl. ¶¶9, 18, 22-27.)

18.     Recognizing these aspects of a BIA receivership, bankruptcy courts in the US routinely recognize BIA receivership proceedings as "foreign proceedings" under chapter 15 of the Bankruptcy Code.  *See, e.g., In re Calmena Energy Servs. Inc., et al.*, Case No. 15-30786 (KKB) (Bankr. S.D. Tex. Mar. 5, 2015); *In re ARXX Corp.*, Case No. 13-13313 (KJC) (Bankr. D. Del. Jan. 31, 2014); *In re Fletcher Leisure Grp. Ltd.*, Case No. 13-13420 (BRL) (Bankr. S.D.N.Y. Nov. 13, 2013), *In re Wellpoint Sys., Inc*., et al., Case No. 11-10423 (MFW) (Bankr. D. Del. Feb. 25, 2011); *In re Salerno Plastic Film and Bags (USA) Inc.*, Case No. 10-14504 (REL) (Bankr. N.D.N.Y. Jan. 13, 2011); *In re EarthRenew IP Holdings LLC, et al*., Case No. 10-13363 (CSS) (Bankr. D. Del. Nov. 10, 2010); *In re Innua Canada Ltd., et al*., Case No. 09-16362 (DHS) (Bankr. D.N.J. Apr. 15, 2009); *In re CPI Plastics Grp. Ltd.*, Case No. 09-20175 (JES) (Bankr. E.D. Wis. Feb. 10, 2009); *In re Daymonex Ltd.*, Case No. 07-90171 (BHL) (S.D. Ind. Feb. 26, 2007); *see also In re Klyties' Dev., Inc., et al.*, Case No. 07-22719 (MER) (Bankr. D. Co. Feb. 8, 2008) (recognizing Canadian securities receivership as a foreign main proceeding); (Mann Decl. ¶11.)

19.     Accordingly, the Petitioner respectfully submits that the Canadian Proceeding should be recognized as a "foreign proceeding" under section 101(23) of the Bankruptcy Code.

### 2.    The Debtors' COMI is Alberta, Canada

20.    The Bankruptcy Code does not define COMI, though "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests."  11 U.S.C. § 1516(c).  The section 1516(c) presumption "permits and encourages fast action in cases where speed may be essential."  *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007) *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).  Here, Strata Energy's registered office—the Head Office—is in Alberta, (Petitioner Decl. ¶¶9, 43.), and therefore, Canada is presumed to be the Strata Energy's COMI under section 1516(c) of the Bankruptcy Code.  And although Strata International's registered office is located in Nevada, and conducts some operations out of its Wyoming facility, it is managed through the Head Office in Canada.  (*See* Petitioner Decl. ¶¶10, 43.)  Thus, any section 1516(c) presumption is rebutted upon the presentation of contrary evidence.  *See Bear Stearns*, 374 B.R. at 128.

21.    Generally, "COMI lies where the debtor conducts its regular business, so that the place is ascertainable by third parties."  *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 130 (2d Cir. 2013).  To determine the Debtors' COMI, courts commonly consult a nonexhaustive list of factors, including:

> the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.

*Fairfield Sentry*, 714 F.3d at 137; *see In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 336 (S.D.N.Y. 2008). "In addition, the court may consider the location of the debtor's 'nerve center,' including from where the debtor's activities are directed and controlled, in determining a debtor's COMI." *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) (citation and quotations omitted). Courts may also consider "international sources of law . . . to underscore the importance of factors that indicate regularity and ascertainability." *Id*. (citation and quotations omitted). Finally, courts have found that COMI is determined as of the date that the chapter 15 petition is filed. *Fairfield Sentry*, 714 F.3d at 133-37.

22.     In this case, the Debtors' COMI is Alberta, Canada. Despite certain connections to the US, Iraq, and other countries, the Debtors' "real seat" has always been Alberta. *See, e.g., In re Catalyst Paper Corp.*, Case No. 12-10221 (PJW) (Bankr. D. Del. Mar. 5, 2012) (Hr'g Tr. 28:14-20) [D.I. 92] (Walsh, J.: "Regarding the COMI issue, I've seen practically the same scenario at least on two other occasions in the last few years where the number and activity of the Canadian debtors outweighs the number and activity of the U.S. debtors, and where the shots that are called come out of Canada, not the United States. And I think it's a very conventional recognition that I'll approve."). Since the Debtors' founding, their headquarters has been located at the Head Office in Alberta, Canada. (Petitioner Decl. ¶¶9-10, 43.) The Debtors' directors are all Canadian citizens and residents and managed, directed, and controlled the Debtors' affairs from the Head Office. (*See id*.) And although Strata International is a US company on paper, its directors and primary decision makers—Ken Travis and Lyle Filliol—sit on Strata

-14-

Energy's (the Canadian parent company) board and operate Strata International in conjunction with, and as a wholly integrated part of, Strata Energy's broader oilfield-service business, all from the Head Office in Canada.    (*See id*. at ¶¶10, 45-47.) Consequently—for both Strata Energy and Strata International—all material business and administrative decisions were issued from the Head Office, including, but not limited to, matters concerning corporate policy and governance, business strategy, financing, hiring, and significant transactions.  (*See id*. at ¶43.)

23.    In addition, the following factors support a finding that Alberta, Canada is the Debtors' COMI:

- Strata Energy—the parent company—is incorporated in Alberta, Canada;

- Strata's Head Office is located in Alberta, Canada;

- All strategic business decisions concerning Strata are made at, or otherwise issued from, the Head Office, including decisions related to financial and operational matters;

- Strata's directors are Canadian citizens and residents and work from the Head Office;

- Strata's marketing materials, including its website, identify Strata as a Canadian company;

- Strata held itself out to creditors as a Canadian company;

- Strata held board meetings in Alberta, Canada;

- Strata Energy files its tax returns with, and pays tax on its profits to, the Canada Revenue Agency;

- Strata's books and records are held in Alberta, Canada, including all of the Strata's data and servers;

- Strata's primary bank accounts are maintained in Alberta,

Canada; and

- The Petitioner is located in Ontario, Canada, so all decisions related to the Canadian Proceeding and these chapter 15 cases are made in Ontario, Canada.

(Petitioner Decl. ¶43.)

24.    In light of the above, that the Debtors' COMI is Alberta, Canada was inarguably "ascertainable by third parties."  *See Fairfield Sentry*, 714 F.3d at 130. No other jurisdiction has either the quantity or quality of contacts with the Debtors; thus, creditors could reasonably anticipate that the Debtors would avail themselves of, or otherwise be subject to, Canadian law in the event of insolvency.   The Canadian Proceeding, therefore, is pending in the Debtors' COMI—Alberta, Canada.  Accordingly, pursuant to sections 1502(4) and 1517(b)(1) of the Bankruptcy Code, the Canadian Proceeding should be recognized as a foreign main proceeding.

**B.    Alternatively, the Canadian Proceeding is a "Foreign Nonmain Proceeding"**

25.    In the event that the Court, for some reason, does not recognize the Canadian Proceeding as a foreign main proceeding, the Petitioner respectfully requests that same be recognized as "foreign nonmain proceeding" as defined in section 1502(5) of the Bankruptcy Code.  Pursuant to section 1517(b) of the Bankruptcy Code, a foreign proceeding will be recognized as a "foreign nonmain proceeding" if the debtor has an "establishment" in the foreign country where the proceeding is pending.  *See* 11 U.S.C. § 1517(b)(2).   An "establishment" means "any place of operations where the debtor carries out a nontransitory economic activity."  11 U.S.C. § 1502(2).

26.    Here, the Debtors indisputably have an "establishment" in Canada and thus,

-16-

the Canadian Proceeding may be recognized as a foreign nonmain proceeding.  As

mentioned above, the Debtors' headquarters and primary management team are based in

Alberta, Canada.  (*See* Petitioner Decl. ¶¶9-10, 43.)  Strata Energy—a Canadian

corporation—was financed entirely through a Canadian loan facility, files and pays taxes

to the Canada Revenue Agency, and provided services to Canadian clients at Canadian

oilfields, among other things.  (*See id*. at ¶¶43-44.)  As for Strata International, the US

subsidiary, it carried out various nontransitory economic activities in Canada.  (*See id*. at

¶¶10, 43-47, 51.)  Indeed, Strata International was funded through Strata Energy's

Canadian loan facility, thoroughly integrated with—and largely dependent upon—the

business and most back-office operations of Strata Energy, and managed by two

Canadian director-officers out of the Head Office.  (*See id*. at ¶¶9-10, 45-47.)

27.    Accordingly, the Petitioner respectfully submits that the Canadian

Proceeding should, in the alternative, be recognized as a "foreign nonmain proceeding"

pursuant to section 1502(5) and 1517(b)(2) of the Bankruptcy Code.  *See, e.g., In re*

*Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 85 (Bankr. S.D.N.Y.

2011) *aff'd*, 474 B.R. 88 (S.D.N.Y. 2012) (noting that, at the very least, the debtors had

an "establishment" in Bermuda where two of funds' three directors were located, and

their bank account, custodian, and auditors were situated); *In re SPhinX, Ltd.*, 351 B.R.

103, 122 (Bankr. S.D.N.Y. 2006) *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007).

## C.    The Petitioner is a "Foreign Representative"

28.    Section 1517(a) further requires that "the foreign representative applying

for recognition [be] a person or body."  *See* 11 U.S.C. § 1517(a)(2).  Under the

Bankruptcy Code, a "foreign representative" means:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).  Thus, a "foreign representative" must be (i) a person or body that is (ii) authorized in a foreign proceeding to either (a) administer the reorganization or liquidation of a debtor's assets or affairs or (b) act as a representative of such proceeding. *See Ad Hoc Grp. of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*, 470 B.R. 408, 412 (N.D. Tex.) *aff'd sub nom.* 701 F.3d 1031 (5th Cir. 2012). Section 101(41) of the Bankruptcy Code defines a "person" to include individuals, partnerships, and corporations.  *See* 11 U.S.C. § 101(41).

29.     Here, the Petitioner is a corporation, duly appointed and authorized by the Canadian Court as the Debtors' receiver and foreign representative, empowered to administer the Debtors' assets and affairs in the Canadian Proceeding and to commence these chapter 15 cases.  (*See* Petitioner Decl. ¶¶32-33; Receivership Order, attached to Petitioner Decl. as Exhibit A, at ¶30: "the [Petitioner] is hereby specifically authorized and empowered to: (i) act as the 'foreign representative' in respect of [the Canadian Proceeding] as that term is used in section 101(24) of [the Bankruptcy Code]; (ii) seek recognition of theses proceedings . . . pursuant to chapter 15 of [the Bankruptcy Code]; seek foreign recognition of any orders made by [the Canadian Court] . . . ; and (iv) seek any other appropriate relief from foreign courts as the [Petitioner] deems just and proper.")  Accordingly, the Petitioner satisfies the requirements of sections 101(24) and

1517(a)(2) of the Bankruptcy Code.[4]

**D.    The Verified Petition Was Properly Filed and Satisfies the Requirements of Section 1515 of the Bankruptcy Code**

30.    The final prerequisite to recognition under section 1517(a) is that the petition satisfies the procedural requirements of section 1515.  Section 1515 sets forth the requirements for an application for recognition under chapter 15: (i) the foreign representative must file a petition for recognition, *see* 11 U.S.C. § 1515(a); (ii) the petition for recognition must be accompanied by either (a) "a certified copy of the decision commencing [the] foreign proceeding and appointing the foreign representative," (b) "a certificate from the foreign court affirming the existence of [the] foreign proceeding and of the appointment of the foreign representative," *or* (c) if such evidence is unavailable, "any other evidence acceptable to the Court" demonstrating the existence of the foreign proceeding and "appointment of the foreign representative," *see* 11 U.S.C. § 1515(b)(1)-(3); and (iii) a statement must be filed "identifying all foreign proceedings with respect to the debtor that are known to the foreign representative," *see* 11 U.S.C. § 1515(c).[5]

---

[4]    Pursuant to section 1516(a) of the Bankruptcy Code, "[i]f the decision or certificate referred to in section 1515(b) indicates that . . . the person or body is a foreign representative, the court is entitled to so presume."  Here, the Petitioner submitted the Receivership Order, which authorizes the Petitioner to serve as the Debtors' "foreign representative"; thus, the Court is entitled to presume that the Petitioner satisfies the requirements of sections 101(24) and 1517(a)(2) of the Bankruptcy Code.

[5]    Section 1515(d) requires that documents submitted in connection with the requirements under section 1515(b) be translated into English.  Here, no translation is required and thus, the Petitioner respectfully submits that subsection (d) does not apply to the Verified Petition.

31.     Here, these cases have been commenced by the Petitioner—a foreign representative—by the filing of this Verified Petition. 11 U.S.C. § 1515(a).  The Verified Petition is accompanied by a copy of the Receivership Order, which demonstrates the commencement of the Canadian Proceeding and further authorizes the Petitioner to act as the Debtors' foreign representative.  (Petitioner Decl. ¶¶31-33); 11 U.S.C. § 1515(b)(1). Further, the Petitioner submits that the Receivership Order constitutes "a certificate from the foreign court affirming the existence of [the Canadian Proceeding] and of the appointment of the [Petitioner]."  11 U.S.C. § 1515(b)(2).  Finally, the Verified Petition is accompanied by the *Statement of Petitioner Pursuant to 11 U.S.C. § 1515(c) Identifying Foreign Proceedings* filed concurrently herewith, which identifies the Canadian Proceeding as the only known "foreign proceeding" with respect to the Debtors.  *See* 11 U.S.C. § 1515(c).

32.     As set forth above, each of the prerequisites to recognition under section 1517 has been met.  Accordingly, the Petitioner respectfully requests that the Court recognize (i) the Canadian Proceeding as a foreign main proceeding, or alternatively, a foreign nonmain proceeding and (ii) the Petitioner as the Debtors' foreign representative.

**E.     The Petitioner is Entitled to Relief Under Section 1520**

33.     Upon recognition of the Canadian Proceeding as a foreign main proceeding, section 1520 of the Bankruptcy Code prescribes certain forms of relief available to the Petitioner, and respecting the Debtors' property within the territorial jurisdiction of the United States.  Such relief is granted automatically as a consequence of recognition, and section 1520 requires no further showing by the Petitioner to obtain such

relief.  However, to the extent the Court recognizes the Canadian Proceeding as a foreign nonmain proceeding, the Petitioner respectfully requests that the Court enter an order pursuant to section 1521 of the Bankruptcy Code, conferring on the Debtors and the Petitioner the relief set forth in section 1520(a).

**F.    Recognition of the Canadian Proceeding is Not Contrary to Public Policy**

34.    Pursuant to section 1506 of the Bankruptcy Code, "[n]othing in [chapter 15] prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States."  Here, recognition of the Canadian Proceeding as a foreign main proceeding, or, alternatively, a foreign nonmain proceeding, is not contrary to U.S. policy.  As set forth above, chapter 15 was enacted to, among other things, promote (i) cooperation between United States courts and foreign courts in cross-border insolvency cases, (ii) the protection of all interested parties in a cross-border insolvency, and (iii) the "maximization of the value of the debtor's assets."  *See* 11 U.S.C. § 1501(a).  PNC Bank commenced the Canadian Proceeding—and the Petitioner subsequently filed the Verified Petition—in order to prevent creditors from pursuing individual remedies, preserve and maximize the value of the Debtors' assets, and ensure that any such assets are monetized and equitably distributed.  (*See* Petitioner Decl. ¶¶28-36.)  Further, the Debtors have counterparties and potential creditors as well as US assets, that—pursuant to the Receivership Order—are subject to the Petitioner's administration in the Canadian Proceeding, but are not within the Canadian Court's jurisdiction without the assistance of this Court, which is what chapter 15 is meant to provide.  Consequently, these chapter 15 cases are necessary to

-21-

ensure the support and cooperation of any potential counterparties, stakeholders, and

other parties whose compliance is needed to maximize the value of the Debtors' assets in

connection with a potential Sale. Thus, the Petitioner's objectives advance fundamental

policies of US bankruptcy law, and are not contrary to them. Accordingly, US public

policy favors recognition.

**G.    Additional Relief Under Section 1521 is Necessary and
Appropriate**

35.    "[W]here necessary to effectuate the purpose of [chapter 15] and to protect

the assets of the debtor or the interests of the creditors, the court may, at the request of the

foreign representative, grant any appropriate relief. . . ." 11 U.S.C. § 1521(a). Such

relief may include, "entrusting the administration or realization of all or part of the

debtor's assets within the territorial jurisdiction of the United States to the foreign

representative," "providing for the examination of witnesses, the taking of evidence or

the delivery of information concerning the debtor's assets, affairs, rights, obligations or

liabilities," and, except for certain avoidance provisions, "any additional relief that may

be available to a trustee. . . ." 11 U.S.C. § 1521(a)(4), (5), and (7).

36.    The Petitioner's goal is to preserve and maximize the value of the Debtors'

assets for the benefit of their creditors, likely, through a court-approved Sale. (*See*

Petitioner Decl. ¶¶34-42.) These chapter 15 cases were filed to help the Petitioner realize

that goal. Accordingly, the Petitioner respectfully requests that it be (i) entrusted with the

realization, administration, and distribution of the Debtor's assets within the territorial

jurisdiction of the US pursuant to section 1521(a)(5) of the Bankruptcy Code and (ii)

empowered to examine witnesses and take evidence or delivery of information concerning the Debtors' assets, affairs, rights, obligations or liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code.  In addition, pursuant to section 1520(a)(1) through (3), the Petitioner seeks (i) the stay of any execution as well as the commencement, or continuation of any action or proceeding concerning the Debtors' assets, rights, obligations or liabilities and (ii) the suspension of the right to transfer, encumber or otherwise dispose of any of the Debtors' assets, to the extent any such actions have not been stayed or suspended under sections 362 and 1520(a) of the Bankruptcy Code.  This relief is needed in order for the Petitioner to complete the Debtors' wind down and ensure that all distributable assets have been identified and collected.  Moreover, section 1521 relief is essential to the Petitioner's ability to maximize the value of the Debtors' assets through a Sale.  Such relief will preserve the value of the Debtors' US assets, further protect claimholders against individual creditor's remedies, and enable the Petitioner to transfer US assets to a purchaser through a Sale.

37.    Additionally, pursuant to section 1521(b) of the Bankruptcy Code, the court may, upon recognition and "at the request of the foreign representative, entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative . . . provided that the court is satisfied that the interests of creditors in the US are sufficiently protected."  11 U.S.C. § 1521(b).  Here, the Petitioner is actively investigating the Debtors' US assets and operations to ensure that all creditors are being treated properly, and is bound as the arm of the Canadian Court to maximize value of the assets and ensure proper treatment and make a distribution to creditors as prescribed by

the priority scheme under Canadian law.[6]  (*See* Mann Decl. ¶¶4-5, 22.)  That priority scheme is similar to that applicable in chapter 7.  As a result, the Petitioner respectfully submits that pursuant to section 1521(b) and at its request, the Court should authorize and direct the turnover of assets for distribution through the Canadian Proceeding.

38.     Bankruptcy courts across the country have granted similar relief regularly. *See, e.g., In re Calmena Energy Servs. Inc., et al.*, Case No. 15-30786 (KKB) (Bankr. S.D. Tex. Mar. 5, 2015); *In re ARXX Corp.*, Case No. 13-13313 (KJC) (Bankr. D. Del. Jan. 31, 2014); *In re Fletcher Leisure Grp. Ltd.*, Case No. 13-13420 (BRL) (Bankr. S.D.N.Y. Nov. 13, 2013), *In re Wellpoint Sys., Inc.*, et al., Case No. 11-10423 (MFW) (Bankr. D. Del. Feb. 25, 2011); *In re Salerno Plastic Film and Bags (USA) Inc.*, Case No. 10-14504 (REL) (Bankr. N.D.N.Y. Jan. 13, 2011); *In re EarthRenew IP Holdings LLC, et al.*, Case No. 10-13363 (CSS) (Bankr. D. Del. Nov. 10, 2010); *In re Innua Canada Ltd., et al.*, Case No. 09-16362 (DHS) (Bankr. D.N.J. Apr. 15, 2009); *In re CPI Plastics Grp. Ltd.*, Case No. 09-20175 (JES) (Bankr. E.D. Wis. Feb. 10, 2009); *In re Daymonex Ltd.*, Case No. 07-90171 (BHL) (S.D. Ind. Feb. 26, 2007); *see also In re Klyties' Dev., Inc., et al.*, Case No. 07-22719 (MER) (Bankr. D. Co. Feb. 8, 2008) (recognizing Canadian securities receivership as a foreign main proceeding); (Mann Decl. ¶11.)

---

[6]   To the extent Sale proceeds are sufficient only to pay secured creditors, no US claims process is needed.  If Sale of the Debtors' assets generates sufficient funds to satisfy secured creditors, the Petitioner may apply for the Court to install a process to administer and make distributions with respect to unsecured US claims.  In addition, though the Petitioner has not requested that section 365 of the Bankruptcy Code apply in these chapter 15 cases, the Petitioner may seek such relief from the Court to the extent a potential purchaser of the Debtors' assets requires the assumption and assignment and/or rejection of any US executory contracts and/or unexpired leases.

39.     Further, the relief is appropriate because (i) the Petitioner is already vested with the power to take any such actions under Canadian law, (*see* Petitioner Decl. ¶¶ 32-33; *see also* Mann Decl. ¶6, 16-18) and (ii), as mentioned above, the BIA already provides for a broad stay of actions and/or proceedings with respect to the Debtors' property and assets, (*see* Mann Decl. ¶14.)

## **RESERVATION**

40.     The Petitioner was recently appointed receiver for the Debtors and has begun to diligently investigate their operations and finances—including any potential claims or competing interests in the Debtors' assets.  However, given the early stage of the investigation and the Canadian Proceeding, the Petitioner does not have a complete understanding of the Debtors' finances and operations and therefore, no statement or omission in this Verified Petition or any related filings—including the Petitioner Declaration—should be construed as (i) an admission with respect to the nature, extent, scope, or validity of any potential claim against the Debtors or their assets or (ii) a full and complete statement of the facts and circumstances relevant to these chapter 15 cases. Further, the Petitioner hereby reserves any and all rights it may have to amend, modify, or file supplemental papers in connection with this Verified Petition and the requested relief to the extent that the Petitioner deems appropriate during the course of the investigation.

## NOTICE

41.     Notice of this Verified Petition has been provided in accordance with the terms set forth in the Petitioner's *Ex Parte Motion for an Order (I) Scheduling Hearing Regarding Verified Chapter 15 Petitions, and (II) Specifying Form And Manner of Service of Notice* filed concurrently herewith.  The Petitioner submits that such notice is proper and that no other or further notice need be provided.

## NO PRIOR REQUEST

42.     No prior motion or application for the relief requested herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Petitioner respectfully requests that this Court enter an order, substantially in the form of the attached Proposed Order, (i) recognizing the Canadian Proceeding as (a) a "foreign main proceeding" or, in the alternative, (b) a "foreign non-main proceeding" under sections 1502(4), 1502(5), 1515, and 1517 of the Bankruptcy Code; (ii) recognizing the Petitioner as the "foreign representative" of the Debtors as defined in section 101(24) of the Bankruptcy Code; (iii) granting the Petitioner authority—pursuant to section 1521(a) of the Bankruptcy Code—to (a) examine witnesses, take evidence, and deliver information concerning the Debtors' assets, affairs, rights, obligations, and liabilities and (b) administer, realize, and distribute any and all of the Debtors' assets within the territorial jurisdiction of the United States; (iv) staying—pursuant to section 1521(a) of the Bankruptcy Code—the execution, commencement, or

continuation of any action or proceeding concerning the Debtors' assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520; (v) suspending—pursuant to section 1521(a) of the Bankruptcy Code—the right to transfer, encumber or otherwise dispose of any of the Debtors' assets to the extent any such right has not been suspended under sections 362 and 1520(a) of the Bankruptcy Code; and (vi) granting such other and further relief as the Court deems just and proper.

[*signature on following page*]

Dated: December 14, 2015
     Cheyenne, Wyoming               Respectfully submitted,


**DRAY, DYEKMAN, REED & HEALEY, P.C.**


      */s/ Gregory C. Dyekman*
Gregory C. Dyekman
Timothy L. Woznick
204 East 22nd Street
Cheyenne, Wyoming 82001
Tel: (307) 634-8891
Fax: (307) 634-8902
Email: greg.dyekman@draylaw.com
       tim.woznick@draylaw.com

-and-

**DENTONS US LLP**

D. Farrington Yates
Oscar N. Pinkas (pro hac pending)
James A. Copeland
1221 Avenue of the Americas
New York, New York 10020
Tel:  (212) 768-6700
Fax:  (212) 768-6800
Email: farrington.yates@dentons.com
      oscar.pinkas@dentons.com
      james.copeland@dentons.com

*Counsel for the Petitioner*

## <u>VERIFICATION OF CHAPTER 15 PETITIONS</u>

Pursuant to 28 U.S.C. § 1746, I, Ken Pearl, in my capacity as a Senior Vice President of the Petitioner, declare as follows:

The Petitioner is the appointed receiver and duly authorized foreign representative of the Debtors.  The Petitioner has full authority to verify the foregoing chapter 15 petitions for recognition of foreign main proceeding, or alternatively, foreign nonmain proceeding, including each of the attachments thereto, and is informed and believes that the allegations contained therein are true and accurate to the best of the Petitioner's knowledge, information, and belief.

I, in my capacity as a Senior Vice President of the Petitioner, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _13_ day of December 2015
in Ontario, Canada.

THE FULLER LANDAU GROUP INC.,
in its capacity as the Debtors' appointed
receiver and duly authorized foreign
representative

Name: Ken Pearl
Title: Senior Vice President